DOROTHY A. FRASER ET AL., PROSECUTORS, v. TOWNSHIP OF TEANECK, A MUNICIPAL CORPORATION, ETC., ET AL., DEFENDANTS.

Argued March 22, 1948—Decided April 26, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutors, *Louis G. Morten.*

For the defendant Township of Teaneck, *Donald M. Waesche.*

For the defendant Estate of William Walter Phelps, *L. Stanley Ford*.

For the intervenor, Garden State Developers, Inc., *Warren Dixon, Jr.*

The opinion of the court was delivered by

EASTWOOD, J.  On December 9th, 1947, a writ of *certiorari* was allowed to review the legality *vel non* of a resolution adopted on November 18th, 1947, by the Township Council of the Township of Teaneck, providing for an exchange of 152 vacant lots acquired by the Township of Teaneck by tax title foreclosure for certain tracts of land owned by the Estate of William Walter Phelps.  Previous to the resolution of November 18th, 1947, the Township Council of Teaneck had entered into an agreement with the Phelps Estate under date of April 15th, 1947, whereby it was agreed to exchange certain municipally owned lots for the same lands that were to be received by the township from the Phelps Estate.  On December 31st, 1947, a writ of *certiorari* was allowed to review this agreement.  A motion was made by the defendants to dismiss the writ allowed on December 9th, 1947.  Decision on this motion was reserved.  It was thereupon ordered that both writs in question should be argued together.  Defendants rely upon the resolution of November 18th, 1947, and inasmuch as the writ allowed on December 9th, 1947, to review said resolution will be dispositive of the issue, our comments will be directed solely to it.

Although the record and exhibits before us are voluminous, the issue as we view it is a narrow one.  Did the township possess legal authority to make the exchange of lands with the defendant, Estate of William Walter Phelps, and did the resolution of November 18th, 1947, authorizing the exchange comply with the requirements of the law applicable thereto?  Prosecutors, who are taxpayers of the Township of Teaneck, insist that the governing body possessed no power to make the exchange complained of by the adoption of the resolution in question, it being their contention that such action could only have been lawfully exercised by submitting the matter

to the voters for their determination. Further, it is said that the action of the governing body was unconstitutional, in that it contravenes the "due process" clause and the "equal protection of the laws" provisions of the Fourteenth Amendment of the United States Constitution. Also, it is urged that *R. S.* 54:5–116 is repugnant to article III and article I, paragraph 19, of the New Jersey Constitution, in that the statute violates the constitutional provisions providing for the separation of government into three distinct departments and prohibiting the giving of any money or property to or in aid of any corporation. Finally, it is said that the value of the lands proposed to be exchanged by the Township of Teaneck to the Estate of William Walter Phelps are of greater value than the lands to be given in exchange by the Phelps Estate, thereby violating the provisions of *R. S.* 54:5–116. In reply, the Township of Teaneck points out that it has authority to make the exchange in question under the provisions of *R. S.* 54:5–116, and that additionally, it has statutory authority for its action under two other statutes namely *Pamph. L.* 1944, *ch.* 77, *p.* 153; *R. S.* 40:60–51.3; and *Pamph. L.* 1946, *ch.* 157, *p.* 720; *R. S.* 40:60–51.1, the argument being that these three statutes are *in pari materia* and are equally authoritative to support the township's position. Likewise, it is claimed that the proofs reveal that the lands to be acquired from the Phelps Estate are of substantially greater value than those to be given in exchange by the Township. It may be observed parenthetically that the exchange of lands was prompted by a recommendation of the Planning Board of the Township of Teaneck for public use as a park and for recreational purposes.

*R. S.* 54:5–116 provides for the exchange by a municipality of vacant lands acquired by it by tax title foreclosure for lands of others that it may require for park purposes within the municipality. Such exchange is conditioned by the requirement that the lands so acquired shall not be less in value than the lands of the municipality given in exchange. The statute provides for such action by the adoption of a resolution by the governing body setting forth the lands to be exchanged and indicating therein such adjustments in

taxes and assessments as it shall deem for the best interest of the municipality. *R. S.* 40:60–51.1 and *R. S.* 40:60–51.3 are of similar import. Our comparison of the cited statutes leads us to the conclusion that they are *in pari materia,* relate to the same subject, and as such are to be construed as vesting in the governing body of the municipality legal sanction for effecting the exchange by means of a resolution. We think that a clear reading of the cited statutes will evidence that it was the intention of the legislature to vest in the governing body of a municipality the power to effectuate the purpose of such exchange by way of resolution, rather than by public referendum. This construction of the statute would seem to be supported by the provisions of *R. S.* 54:5–3 which declares that the statute (*R. S.* 54:5–116) shall be deemed to be remedial and shall be liberally construed to effectuate the remedial objects thereof. If such power should be abused, those who may be injured thereby are, of course, entitled to redress in a proper case by application to the courts.

The voluminous record before us is composed largely of the depositions taken in accordance with the writ, and it is evident therefrom that the main point of controversy is the question of value of the lands to be exchanged. We have carefully reviewed the record and in our opinion the proofs, as established by the township's witnesses, are overwhelming that the lands to be acquired by the township are at least of equal value to those given to the Phelps Estate, and if we read the testimony accurately, are of considerably greater value. The township's witnesses, who are apparently competent and experienced real estate men of many years experience in that field in the vicinity of the lands involved, testified that the lands of the Phelps Estate are of greater value than those to be conveyed to it by the township. Floyd B. Farrant, testifying on behalf of the township, valued the land to be conveyed to the Estate of William Walter Phelps at $119,000 and valued the land which was to be acquired from it by the township in exchange at $144,350, thereby valuing the Phelps Estate land at $25,350 greater than he valued the township land. Edward H. Feltus also testifying on behalf of the township arrived at an excess value of the Phelps Estate

lands above the township lands in the amount of $22,691. Although the burden was on the prosecutors to establish that the Phelps Estate lands were of less value than the township lands, they utterly failed to sustain this burden by the proofs. In the first place no evidence was submitted by them as to the value of the township's lands and secondly, the only proof submitted by them as to the value of the Phelps Estate lands were assessments for the year 1935 as passed upon finally by the State Board of Taxation. We are not impressed by the testimony of the witnesses Bernard J. Bergton and William J. Burke. In our opinion they fail to qualify as expert real estate men, and their testimony is consequently not entitled to be given much weight. Mr. Bergton never bought, sold or acted as an agent for the sale of lands similar to those of the Phelps Estate and had no knowledge of any similar sale by others. Additionally, Mr. Bergton was actively interested in the case and had publicly agitated against and opposed the exchange of lands in question. The witness Burke, although he held a real estate broker's license, had never been engaged in the real estate business. His experience was largely that of a contractor and appraiser of improved properties. He, too, had not sold vacant or industrial land or acted as an agent therefor. Neither Mr. Bergton nor Mr. Burke attempted to appraise the value of the township's lands, and did not, therefore, testify as to the value thereof. With these circumstances before us we do not perceive how the witnesses Bergton and Burke could intelligently make any comparison between the value of the lands of the township and those of the Phelps Estate.

The good faith of the Township Council of the Township of Teaneck in passing the resolution of November 18th, 1947, authorizing the exchange of lands is not questioned. The record reveals that due consideration was given to the proposal. It was first studied and approved by the local planning board composed of independent, high-type citizens who unanimously recommended the exchange. A public hearing was given on the proposed resolution, notice was given to the prosecutors and their attorney who were present and given the opportunity to interpose their objections before the adoption

of the resolution. None were made. If this were not enough, the prosecutor Harold A. Ham testified that there was absolutely no question in his mind as to the good faith and sincerity of the governing body in the adoption of the resolution under review.

We have considered prosecutors' contentions with reference to the alleged unconstitutionality of the action complained of and find no merit in them.

Our determination of this issue makes it unnecessary to decide the motion to dismiss.

The writ is dismissed.